UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

JO LYNN WILSON                        :
                                      :
        Plaintiff                     :        CIVIL ACTION NO.:
                                      :        3:15-CV-00207-DFM
vs.                                   :
                                      :
YALE UNIVERSITY                       :
                                      :
        Defendant                     :        JUNE 2, 2016

### AFFIDAVIT OF PATRICK M. NOONAN

I, Patrick M. Noonan, being duly sworn, depose and say that:

1.      I am over the age of eighteen years and believe in the obligation of an oath.

2.      I am a partner at Donahue, Durham, & Noonan, P.C. and represent the defendant in the above-captioned matter.

3.      A true and accurate copy of the letter notifying the plaintiff of her termination is attached hereto as Exhibit A.

4.      A true and accurate copy of the complaint of discrimination filed by the plaintiff with the Connecticut Commission on Human Rights and Opportunities on October 16, 2012 is attached hereto as Exhibit B.

5.      A true and accurate copy of the Finding of No Reasonable Cause by the Commission on Human Rights and Opportunities is attached hereto as Exhibit C.

6.    A true and accurate copy of Article V, Section 1(d), of the Collective Bargaining Agreement between Yale University and Local Federation of University Employees is attached hereto as Exhibit D.

7.    A true and accurate copy of relevant portions of Jo Lynn Wilson's deposition transcript are attached hereto as Exhibit E.

Dated at New Haven, Connecticut this 2nd day of June, 2016.

_____

**Patrick M. Noonan**

STATE OF CONNECTICUT            )
                               ) ss. New Haven
COUNTY OF NEW HAVEN            )

Subscribed and sworn to before me this 2nd day of June, 2016.

_____
Notary Public
My Commission Expires: 6/30/18

2

## **CERTIFICATION**

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/
Patrick M. Noonan

# EXHIBIT A



**Yale University School of Medicine**

Department of Psychiatry

April 11, 2012

Ms. Jo Lynn Wilson
1311 Ella Grasso Blvd
New Haven, CT  06511

Dear Jo Lynn,

Article V, Secton 1 (d) of the Agreement between Yale University and Local 34, Federation of University Employees states that  a staff member who is absent from work for five (5) or more consecutive working days without notifying his/her Supervisor shall be deemed to have voluntarily resigned his/her employment with the University.

Your absence from April 2 through April 9, 2012 without contacting your supervisor falls within these guidelines.  This letter is written notification that we consider you to have voluntarily resigned your position with Yale University.

Any University belongings must be returned to me immediately.  Please contact me directly to set up a mutually agreeable time to do so.

Your health and dental insurance will continue through May 2012. You have rights to continue your health insurance coverage beyond this date. Material concerning this option will be mailed to you.  However, you may contact the Employee Service Center for more information at 203-432-5552.

If you have any questions please contact your HR Generalist, Lisa Nolen, at 203-785-2113.

Sincerely,

Megan V. Smith, Ph.D.

cc:     Lisa Gray, Labor Relations
        Lisa Nolen, Human Resource Generalist, Dept. of Psychiatry

# EXHIBIT B

```
RECEIVED
STATE OF CONNECTICUT

OCT 1 6 2012

Comm. On Human Rights & Opp...
WEST CENTRAL REGION
```

FORM 103(1)

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES
West Central Regional Office
55 West Main Street, Suite 210, Waterbury, CT 06702

### AFFIDAVIT OF ILLEGAL DISCRIMINATORY PRACTICE

CASE No. _1330143_                      DATE: _10-15-12_

EEOC No. _____

My name is _____ Jo Lynn Wilson _____

My mailing address is _1311 Ella Grasso Blvd New Haven CT 06511_

My email address is _Jo.wilson45@yahoo.com_

The respondent is _Yale University, Office of Human Resources_

Whose business address is _221 Whitney Avenue, NH, CT 06_ was:

- [✓] discriminated against in terms and conditions of employment on or about _3-1-12_
- [✓] terminated on or about _4-19-12_     [ ] not hired/not promoted on or about _____
- [ ] suspended on or about _____     [ ] not rented a dwelling on or about _____
- [ ] placed on probation on or about _____     [ ] harassed  [ ] sexually harassed on or about _____

- [ ] demoted on or about _____     [✓] earning a different rate of pay on or about _12-12_
- [ ] warned on or about _____     [ ] constructively discharged on or about _____
- [ ] given a poor evaluation on or about _____     [✓] retaliated against on or about _4-19-12_
- [ ] denied a raise on or about _____     [ ] not hired due to a BFOQ on or about _____
- [ ] less trained on or about _____     [ ] not hired due to a disability on or about _____
- [ ] denied an office on or about _____     [ ] delegated difficult assignments on or about _____
- [ ] denied service (s) on or about _____     [ ] other _____

I believe that my:

- [✓] race, African American     [ ] national origin     [ ] ancestry     [✓] color, Black
- [✓] age _45_  DOB: _10-28-66_     [ ] alienage     [ ] religion     [ ] creed
- [ ] marital status     [ ] familial status     [ ] sex  [ ] male  [ ] female
- [ ] sexual orientation     [✓] physical disability  [ ] pregnancy
- [ ] mental disability/disorder     [ ] learning disability  [ ] prior criminal record
- [ ] lawful source of income     [✓] previously opposed discriminatory conduct

↳ Heart Condition

FORM 103(1)

Was in part a factor in this action.  I believe that the respondent violated the following Connecticut General Statutes and acts listed below; ( ) enforced through Section 46a-58(a) (if applicable):

( ) CONN. GEN. STAT. § 46a-60(a)(1)
( ) CONN. GEN. STAT. § 46a-60(a)(4)
( ) CONN. GEN. STAT. § 46a-60(a)(5)
( ) CONN. GEN. STAT. § 46a-60(a)(7)( )( )( )
( ) CONN. GEN. STAT. § 46a-60(a)(8)( )( )( )
( ) CONN. GEN. STAT. § 46a-64( )( )
( ) CONN. GEN. STAT. § 46a-64a( )( )( )
( ) CONN. GEN. STAT. § 46a-70
( ) CONN. GEN. STAT. § 46a-71
( ) CONN. GEN. STAT. § 46a-80 ( )
( ) CONN. GEN. STAT. § 46a-81( )( )( )
( )other_____

( ) Title VII of the Civil Rights Act of
1964, 42 U.S.C § 2000e-2
{cite for 15 individuals employed}
( ) Age Discrimination in Employment
Act of 1967, 29 U.S.C. §§ 621-634
{cite for over 20 individuals employed}
( ) Americans With Disabilities Act,
42 U.S.C. § 12101 et seq.
( ) Equal Pay Act of 1964, U.S.C. § 206
( ) Section 504 of the Rehabilitation Act
of 1973

I provide the following particulars:  (PLEASE TYPE OR PRINT THE INFORMATION)

Was injured at work 3/19/2012. Terminated on April 19, 2012. Call union to ask for assistance to know avail. Denied worker compensation. Case is still pending since 3/12.

Was hired with pre existing medical conditions. in 2010 as a casual employee. Hired permanent part time in Dec. 2011. I feel this is a retaliation also for questioning wanting to extend my probation and other issues relating to my employment.

FORM 103(1)

I request the Connecticut Commission on Human Rights and Opportunities investigate my complaint, secure for me my rights as guaranteed to me under the above cited laws and secure for me any remedy to which I may be entitled.

_Jo Lynn Wilson_ being duly sworn, on oath, states that s/he is the Complainant herein; that s/he has read the foregoing complaint and knows the content thereof; that the same is true of her/his own knowledge, except as to the matter herein stated on information and belief and that as to these matters s/he believes the same to be true.

Dated in _Waterbury_ on this _10/16/12_.

_(signature)_
(Complainant's Signature)

Subscribed and sworn to before me on _10-16-12_.
(Date)

_(signature)_
(Notary Public/Commissioner of the Superior Court)

My commission expires: _____

DEBRA LICURSI
Notary Public
My Commission Expires January 31, 2015

(law mail out affidavit revised 10/2011)

# EXHIBIT C

# STATE OF CONNECTICUT
## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES



### FINDING OF NO REASONABLE CAUSE

---

__JoLynn Wilson__
COMPLAINANT

VS.

__Yale University__
RESPONDENT

CHRO CASE NO: __1330143__          DATE FILED: __10/16/12__
EEOC/HUD NO: __16A-2013-00325__     DATE FILED: __10/16/12__

## PARTIES

**COMPLAINT:**

JoLyn Wilson
1311 Ella Grosso Blvd.
New Haven, CT 06510

**COMPLAINANT'S REPRESENTATIVE:**

John R. Williams
51 Elm Street, Suite 409
New Haven, CT 06510

**RESPONDENT:**

Denise Gilmore
Office of Vice President
Yale University
2 Whitney Ave., 6th floor
New Haven, CT 06510

Page 1 of 4

**RESPONDENT'S REPRESENTATIVE:**

Jonathan Clune
Senior Associate General Counsel
Yale University P.O. Box 208255
New Haven, CT 06520-8255

### JURISDICTION

The investigator concludes that the Commission has jurisdiction to receive, investigate and issue a determination upon the merits of this complaint.

## DRAFT COMMENTS

A draft finding of No Reasonable Cause was made on October 15, 2014 and sent to the parties.

☐  No comments were received from the parties; therefore no changes were made to the draft finding.

☒  Comments were received from the parties which have been considered before making this determination. Changes were made to the draft at paragraphs 8 and 9.

### FINDINGS OF FACT

1) The complainant is a 45 year old African American female who suffers from a heart condition, and who suffered lower back, leg, and ankle injuries due to a fall on March 20, 2012.

2) The complainant was hired as a Research Aide on December 11, 2011 as part of a project between Yale University and a coalition of City Agencies called the New Haven Mental Health Outreach for Mothers or "MOMS". The program was funded with a $2.5 million dollar five year federal grant. The program, the first of its kind in the state, is a joint effort between the City of New Haven, the Yale Department of Psychiatry and Moms in the New Haven area to tackle mental health concerns among mothers.

3) The job posting for the position of research aide states "Mothers who live in New Haven get top priority for these jobs".

4) The Investigator finds according to an article in the New Haven Independent Newspaper states" Wilson (complainant), a mother of six who lives in the West River Neighborhood (New Haven) joined the effort in December 2010 in the pre-planning stage of the program". Wilson set out into parks, hair salons, and daycares, "anywhere I could see women'". She interviewed over 200 women about their needs and stresses in their lives".

5) On December 21, 2011 the complainant had to take a physical examination as a condition of her employment. On December 21, 2011 an Employee Health New Employee Visit form for

JoLyn Wilson states" the above patient has completed his/her visit to Employee Health as a new employee and is cleared to work".

6) The Investigator finds no evidence in the case file that complainant requested a reasonable accommodation in order to perform the essential functions of her position at the time she was initially hired.

7) The Investigator finds on March 20, 2012, the complainant was injured on the job.

8) The Investigator finds on March 29, 2012 the Hospital of St. Raphael Occupational Health Plus ("St. Raphael") Injured Workers treatment report states: "Chief complaint; Head, Shoulder, Low back, and ankle injuries after falling down and hitting head on monkey bar at park. This report also states; Recommended Activity Restrictions: Out of work until 4/2/12. Then restricted duty as follows; Allow to change position between sitting, standing, and walking often and as needed for comfort. No lifting >5-10 lbs. No constant bending, twisting of the neck or waist. Avoid overhead work." This investigator finds the complainant was released to return to work on 4/2/2012, but the complainant never returned to work.

9) The complainant provided the respondent with a note on prescription paper from Family and Internal Medicine of Dixwell Avenue ("Dixwell") dated March 29, 2012, which is the same date of her treatment visit at St. Raphael's . The note made reference to an evaluation by cardiology which is unrelated to the treatment for her injuries (head, shoulder, back and ankle injuries from a fall) on March 20, 2012. It is not clear from the note that the complainant was seeking to be out of work after April 2, 2012, which was the date to return to work provided in the report from Dixwell. The respondent attempted to contact the complainant in order for her to provide information regarding her absence but she did not provide further information and did not return to work.

10) The Investigator finds no evidence in the case file that complainant requested a reasonable accommodation to be out of work after April 2, 2012, or that she engaged the respondent in an interactive process.

11) The Investigator finds complainant's position as a research aide is a unionized position covered by a collective bargaining agreement between Yale University and Local 34, FUE Union. Article V section 1(d) states "A staff member who is absent for five (5) or more consecutive working days without notifying his or her supervisor shall be deemed to have voluntarily resigned his or her employment, except in unusual circumstances."

12) It is an undisputed fact that complainant did not return to work after March 22, 2012.

13) The Investigator finds complainant was terminated on April 11, 2012 because she was absent from work from April 2, 2012 through April 9, 2012 in violation of the collective bargaining agreement.

14) The Investigator finds based on complainant's letter of hire dated December 12, 2011, she was compensated at a rate of $17.62 based on a 20 hour work week, payable weekly.

15) The Investigator finds complainant's rate of pay was increased from $17.62 per hour to $17.98 per hour on January 15, 2012.

16) The Investigator finds no comparative data to show complainant was being paid at a different rate of pay than similarly situated research aides.

17) The Investigator finds the complainant was supposed to return to work on 4/2/12 but failed to do so, failed to contact the respondent to inform them that she would not return on 4/2/12 or that she needed a reasonable accommodation in order to return. Further, complainant did not provide any credible explanation why she could not return on 4/2/12.

18) The Investigator finds after conducting a complete and thorough investigation including conducting a fact finding conference and reviewing the evidence in the case that no reasonable cause exists to believe complainant was discriminated against.

## DETERMINATION

After reviewing all of the evidence in the Commission's file, the investigator concludes that there is **no reasonable cause** for believing that a discriminatory practice has been or is being committed as alleged in the complaint.

Dated and entered this 28th day of October 2014.

COMMISSION ON HUMAN RIGHTS
AND OPPORTUNITIES

Human Rights Representative *FCR RS*

# EXHIBIT D

AGREEMENT

BETWEEN

# YALE UNIVERSITY

# &

# LOCAL 34,  FUE, UNITE HERE

2002 · NEW HAVEN, CONNECTICUT

## ARTICLE IV

### PROBATIONARY PERIOD

A new Staff Member shall be engaged on a probationary basis until the Staff Member has completed ninety (90) calendar days as a Staff Member since the Staff Member's most recent date of hire. During this probationary period the University may terminate the employment of the Staff Member for any reason, and such termination may not be challenged through the Grievance Procedure provided by this Agreement. If a Staff Member is not notified in writing of termination by the ninetieth (90th) calendar day, the Staff Member shall be deemed to have completed the probationary period.

## ARTICLE V

### FAIR TREATMENT OF STAFF MEMBERS

1. (a) No non-probationary Staff Member may be disciplined or discharged except for just cause.

   (b) Counseling of a Staff Member shall not be used to justify subsequent disciplinary action against that Staff Member.

   (c) Any grievance challenging disciplinary action taken by the University involving suspension or discharge shall be filed in writing at Step 2 of the Grievance Procedure provided by this Agreement within ten (10) days after the University's action.

   (d) A Staff Member who is absent from work for five (5) or more consecutive working days without notifying his or her Supervisor shall be deemed to have voluntarily resigned his or her employment with the University, except in unusual circumstances.

   (e) Discipline older than eighteen (18) months does not serve as a basis for progressive discipline, except in cases of serious

# EXHIBIT E

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

JO LYNN WILSON,

   PLAINTIFF,

VS.                      CIVIL ACTION NO.
                        3:15-CV-00207-DFM

YALE UNIVERSITY,

   DEFENDANT.

      Deposition of JO LYNN WILSON, taken pursuant to

Rule 30 of the Federal Rules of Civil Procedure at

the Law Offices of John R. Williams, 51 Elm Street,

New Haven, Connecticut, by Sabina Lohr, Registered

Professional Reporter and Notary Public in and for

the State of Connecticut, on March 21, 2016, at

1:48 p.m.

SABINA LOHR
SHR # 0000131

DEL VECCHIO REPORTING SERVICES, L.L.C.
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE
MADISON, CT 06443
(203) 245-9583        (800) 839-6867
FAX (203) 245-2760

HARTFORD              NEW HAVEN          STAMFORD

Page 55

1    complaint against Yale in that document for age

2    discrimination, race discrimination and disability

3    discrimination?

4        A.    Yes.

5        Q.    Okay.  Now, with regard to the disability

6    discrimination, what did Heather Howell say or do that

7    caused you to believe that she was discriminating

8    against you because of your disability?

9        A.    She didn't say anything to me.  You got -- but

10   that complaint was filed after they terminated me.

11       Q.    Right.  And in that complaint you allege that

12   Heather Howell -- I'm sorry, you allege that Yale

13   discriminated against you because of physical

14   disability; is that right?

15       A.    Open heart surgery, yes.

16       Q.    Okay.  And did Heather Howell do or say

17   anything to you to cause you to believe that she was

18   discriminating against you because of your physical

19   disability?

20       A.    Well, Heather knew that I was -- that I had a

21   disability.  She knew that I was ill.

22       Q.    Okay.  Is there anything else that Heather

23   Howell did or said that causes you to believe that she

24   was discriminating against you because of your

25   disability?

1     A.     No.  She just knew I had a disability.  And her

2    knowing that and turning around and terminating me I

3    think was -- it was -- it was in just -- it was in just

4    her knowing that prior to me getting sick and falling

5    that prior to me falling and being -- she knew I was

6    sick before I fell.  Let's say that.  She knew I was

7    going, seeing my heart doctor, I was having a stress

8    test.  So she knew that I was having -- and kind of

9    remission with my heart.

10                   And I still kept working.  And her

11    knowing that, you know, if she wasn't aware of it that

12    would have been one thing.  But her knowing that I do

13    have a chronic heart condition and that I always worked

14    and then they turn around and ordered me to go to

15    Occupational Health an then terminated me, that to me

16    was premeditated.

17     Q.     Okay.  Is there any other reason beyond what

18    you've said that causes you to think that Heather Howell

19    discriminated against you because of your disability?

20     A.     No.

21     Q.     And let me ask the same thing about Megan

22    Smith.  First of all, do you remember that Megan Smith

23    discriminated against you because of your physical

24    disability?

25     A.     Yes.

Page 57

1   Q.   Okay.  And what did she do or say that causes

2   you to believe that she discriminated against you

3   because of your physical disability?

4   A.   She knew that I had a heart condition also and

5   she actually -- sorry, the reverse back.  They both knew

6   that I had a heart condition and they both know that my

7   son was shot in the head and they knew that I was just

8   going through, you know, things as a person that, you

9   know, that had caused me stress.

10               And then on top of this falling and

11   being injured, that, you know, that that was, you know,

12   that -- that compiled my illnesses also.  So them

13   knowing that, that's the thing.  Them knowing when they

14   hired me that I had a heart condition and that I could

15   get sick any minute, it was like cancer, you being good

16   one day and then the next day you freaking got to be in

17   a hospital.  So they knew.

18               Them knowing my background, knowing that

19   I'm a hard worker and knowing that I went above and

20   beyond any time, for them to have done that that they

21   know that I was physically unable to work at that time

22   and it was wrong.

23   Q.   Okay.  Is there anything else other than

24   knowing of your physical disability that causes you to

25   believe that Megan Smith discriminated against you

Page 58

1   because of your physical disability?

2       A.    Yeah, because I filed against the coworker.

3       Q.    But that's -- I'm just talking about physical

4   disability now.  Is there anything else that Megan Smith

5   did --

6       A.    No.

7       Q.    -- or said besides knowing that you had a

8   disability that causes you to think she discriminated

9   against you because of physical disability?

10      A.    Just that she ignored me when I tried to call

11  her and they just -- she just ignored me pretty much.

12      Q.    Anything else?

13      A.    That was it.  That was it.

14      Q.    Now, when you say that Megan Smith ignored you,

15  can you tell me when she ignored you?

16      A.    When -- after they got my information when I

17  was called -- when I got the letter of termination and I

18  tried to call her I'm like what's going on here?

19  Because we was already in contact.  So it was just kind

20  of like she just ignored my calls.  She didn't want

21  to -- she -- she -- I just didn't understand that I

22  worked with this woman for two -- you know, almost two

23  and a half -- well, '10, so over a year and a half.  And

24  I never called out, I never did anything.

25                  So it was kind of odd that she wouldn't