UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JO LYNN WILSON,                          :
                                         :
        Plaintiff,                       :
                                         :
v.                                       :    CASE NO. 3:15cv207 (RAR)
                                         :
YALE UNIVERSITY,                         :
                                         :
        Defendant.                       :

<u>RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff, Jo Lynn Wilson, brings this employment discrimination case against her former employer defendant, Yale University, pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111, <u>et seq.</u> ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, <u>et seq.</u> ("Rehabilitation Act").  Plaintiff alleges that Yale discriminated against her and refused to provide a reasonable accommodation for her disability.  Pending before the court is defendant's motion for summary judgment. (Doc. #42.)  For the reasons set forth below, the motion is DENIED.[1]

I.    <u>Factual Background</u>

The following facts, drawn from the parties' Local Rule 56(a) statements and exhibits, are undisputed.

---

[1]This is not a recommended ruling.  On October 5, 2015, the parties consented to the jurisdiction of a magistrate judge. Doc. #32; <u>see</u> 28 U.S.C. § 636(c); Fed.R.Civ.P. 73(b).

On December 11, 2010, Yale hired plaintiff as a research aide.  (Am. Compl., Doc. #13, ¶ 6; Am. Answer, Doc. #34, ¶ 6.)  Her supervisors were Megan Smith and Heather Howell.  (Smith Aff., Doc. #42-2, ¶ 3; Howell Aff., Doc. #42-4, ¶ 3.)  During the hiring process, Yale became aware that plaintiff had open heart surgery in 2008 and remained under the care of a cardiologist.  (Pl. Depo., Doc. # 43-4, pp. 22-24.)  Plaintiff was a member of a union, Local 34, Federation of University Employees ("Local 34"), while employed at Yale.  (Smith Aff., Doc. #42-2, ¶ 4; Howell Aff., Doc. #42-4, ¶ 4.)

While at work on March 20, 2012, plaintiff fell, suffering minor injuries to her head, shoulder, lower back, and ankle.  (Doc. #43-3, p. 2.)  Plaintiff notified supervisor Howell that she would be absent from work on March 23, 26, 27, 28 and 29.  (Smith Aff., Doc. #42-2, ¶ 5; Howell Aff., Doc. #42-4, ¶ 5.)  On March 29, 2012, plaintiff was seen at Yale's occupational health clinic.  (Doc. #43-3, p. 2.)  Her blood pressure measured markedly high and the clinician recommended that she see her primary care physician.  (Pl. Depo., Doc. #43-4, p. 9.)  Later that day, plaintiff saw her primary care physician, Dr. Babu Kumar, who referred her to her cardiologist, Dr. Marian Vulpe.  (Pl. Depo., Doc. #43-4, pp. 9-10.)  Dr. Kumar wrote a note on a prescription pad stating: "Seen today.  Out of work till further

2

evaluation by cardiology." (Am. Compl., Doc. #13, ¶ 10; Am. Answer, Doc. #34, ¶ 10; Doc. #43-2, p. 2.) That same day, March 29, 2012, plaintiff brought Dr. Kumar's note to Howell. (Doc. #43-2, p. 2; Pl. Depo. Doc. #43-4, pp. 7-8.) Plaintiff's husband also delivered a copy of the note to Howell. (Pl. Depo., Doc. #43-4, pp. 7-8.)

The next day, Friday, March 30, 2012, plaintiff and her husband both delivered to Howell a "Patient Visit Summary and Instructions" form summarizing plaintiff's March 29 treatment at the occupational health clinic. (Doc. #43-3; Smith Aff., Doc. #42-2, ¶ 6; Howell Aff., Doc. #42-4, ¶ 6; Pl. Depo., Doc. #43-4, pp. 7-8.) The form references the "[h]ead, shoulder, low back and ankle injuries" that plaintiff sustained "after falling down and hitting head" at work, but does not mention her heart condition. (Doc. #43-3.) The note indicates that plaintiff would be out of work until Monday, April 2, 2012.[2] (Doc. #43-3; Smith Aff., Doc. #42-2, ¶ 6; Howell Aff., Doc. #42-4, ¶ 6.)

---

[2]Specifically, the clinician restricted plaintiff's work activity as follows: "The patient's recommended work status is restricted duty. The effective date for this work status is 3/29/2012. Restrictions: Out of work until 4/2/2012. Then restricted duty as follows. Allow to change positions between sitting, standing, and walking often as needed for comfort. No lifting > 5-10 lbs. No constant bending, twisting of the neck or waist. Avoid overhead work." (Doc. # 43-3, p. 2.)

Plaintiff was absent from work Monday, April 2, 2012 through Monday, April 9, 2012.  (Smith Aff., Doc. #42-2, ¶ 7; Howell Aff., Doc. #42-4, ¶ 7.)  Friday, April 6, 2012 was a University holiday.  (Smith Aff., Doc. #42-2, ¶ 7; Howell Aff., Doc. #42-4, ¶ 7.)  Yale terminated plaintiff's employment on Thursday, April 12, 2012, for violating Article V, § 1(d) of the Collective Bargaining Agreement ("CBA") between Yale and local 34 by missing five or more consecutive work days without notifying her supervisor. (Smith Aff., Doc. #42-2, ¶ 8; Howell Aff., Doc. #42-4, ¶ 8; Doc. #42-2, p. 6.)

II.  <u>Summary Judgment Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is a fact that influences the case's outcome under governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986).  A "genuine" dispute is one that a reasonable jury could resolve in favor of the non-movant. <u>Id.</u>  The moving party bears the initial burden of establishing that there are no genuine disputes as to any material fact. <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000). Once such a showing is made, the non-movant must show that there is a genuine issue for trial.  <u>Id.</u>  The court may rely on

4

admissible evidence only, <u>Spiegel v. Schulmann</u>, 604 F.3d 72, 81 (2d Cir. 2010), and must view the evidence in the record in the light most favorable to the non-movant, drawing all reasonable inferences in that party's favor.  <u>Weinstock</u>, 224 F.3d at 41.

III. <u>Discussion</u>

The ADA prohibits discrimination against a "qualified individual with a disability because of the disability" in the "terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Section 504 of the Rehabilitation Act "prohibits discrimination against the disabled by recipients of federal funding."  <u>Barnes v. Gorman</u>, 536 U.S. 181, 184-85 (2002).

Claims alleging disability discrimination in violation of the ADA and § 504 of the Rehabilitation Act are evaluated under the familiar three-step, burden-shifting analysis described in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973). Under this analysis, "if the plaintiff sets forth a prima facie case of discrimination, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions, and, to the extent that it succeeds in doing so, the plaintiff must then demonstrate that the proffered reason was merely a pretext for discrimination."  <u>Gaines v. N.Y.C. Transit Auth.</u>, 353 F. App'x 509, 510 (2d Cir. 2009).

A. <u>Prima Facie Case</u>

The evidence necessary for the plaintiff to satisfy her initial burden is de minimis.  <u>Zimmermann v. Assoc. First Capital Corp.</u>, 251 F.3d 376, 381 (2d Cir. 2001).  "A plaintiff satisfies this burden if he or she introduces evidence that raises a reasonable inference that the action taken by the employer was based on an impermissible factor."  <u>Holcomb v. Iona Coll.</u>, 521 F.3d 130, 138 (2d Cir. 2008).  "Though the burden of meeting the prima facie case is de minimis, a [p]laintiff must adduce some admissible evidence that would support [her] claims."  <u>Nguyen v. Dep't of Corr. & Cmty. Servs.</u>, No. 13-CV-7285 (KMK), 2016 WL 1049028, at *10 (S.D.N.Y. Mar. 11, 2016) (internal quotation marks omitted).

Plaintiff's claims arise under the ADA and the Rehabilitation Act.  "As the standards for actions under these provisions of the ADA and the Rehabilitation Act are generally equivalent, we analyze such claims together."  <u>Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.</u>, 804 F.3d 178, 187 (2d Cir. 2015).  To establish a prima facie case, plaintiff must show that (1) she is a qualified individual with a disability; (2) the employer is an entity subject to the Acts; and (3) plaintiff was denied the opportunity to participate in or benefit from the employer's services, programs, or activities,

or the employer otherwise discriminated against her by reason of her disability.  See Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003).  Yale does not appear to challenge that plaintiff is a qualified individual with a disability or that Yale is an entity subject to the Acts.  The question is whether the evidence raises a reasonable inference that Yale's termination of the plaintiff was based on an impermissible factor.

Yale argues that plaintiff has not presented any evidence of discrimination, but rather, relies solely on her own subjective belief that Yale discriminated against her.  To this point, Yale submits the testimony of plaintiff's supervisors, who aver that she was not terminated because of her heart condition.  (Doc. #42-2, Smith Aff., ¶ 10; Doc. #42-4, Howell Aff., ¶ 10.)  Yale also maintains that plaintiff never requested an accommodation and therefore, she cannot show that Yale refused to provide one.

There is sufficient evidence in the record for a jury to conclude that plaintiff requested an accommodation which Yale refused to provide and that Yale discriminated against her on the basis of her heart-related disability.  Plaintiff's evidence includes Dr. Kumar's March 29 note restricting her from work until further evaluation by her cardiologist; the March 29

occupational health summary form restricting her from work until
April 2 with regard to the injuries she sustained after falling
at work; and relevant portions of plaintiff's deposition
testimony, in which she claims to have personally delivered the
doctors' notes to Yale.  Viewing the evidence in the light most
favorable to plaintiff and in light of her minimal burden, she
has presented sufficient evidence to establish a prima facie
case.

### B. Employer's Non-Discriminatory Reason

Since the plaintiff can establish a prima facie case, the
burden of production shifts to Yale to articulate a legitimate,
non-discriminatory reason for the adverse employment action.
Texas Department of Community Affairs v. Burdine, 450 U.S. 248,
253 (1981) (citing McDonnell, 411 U.S. at 804).  An employer's
burden is to "clearly set forth, through the introduction of
admissible evidence, reasons for its actions which, if believed
by the trier of fact, would support a finding that unlawful
discrimination was not the cause of the employment action."  St.
Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993) (internal
quotation marks omitted).  The employer's "burden of production
is not a demanding one; it need only offer an explanation for
the employment decision."  Campbell v. Cty. of Onondaga, No.
504-CV-1007 (NAM)(GHL), 2009 WL 3163498, at *17 (N.D.N.Y. Sept.

29, 2009).  Here, Yale states that it terminated plaintiff because she violated Article V, § 1(d) of the CBA by missing five or more consecutive days of work without notifying her supervisor and therefore was deemed to have voluntarily resigned.  Yale has met its burden at step two.

          C. Pretext

     The burden shifts back to plaintiff to prove by a preponderance of the evidence that Yale's proffered reason was a "mere pretext for actual discrimination."  Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).  "In order to defeat summary judgment . . ., the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  Stern v. Trustees of Columbia Univ. in City of N.Y., 131 F.3d 305, 312 (2d Cir. 1997).

     "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exist . . . .  In reviewing the evidence and the inferences that may reasonably be drawn, the court may not make credibility determinations or weigh the evidence . . . .  Credibility determinations, the weighing of

the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (internal quotation marks omitted).  "[T]he Second Circuit has cautioned that, in cases where motive, intent or state of mind are at issue, summary judgment should be used sparingly." Ruscoe v. Hous. Auth. of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn. 2003).

Here, plaintiff has submitted sufficient evidence to preclude summary judgment.  There are genuine disputes of material fact concerning when plaintiff could return to work and whether she contacted her supervisors to request an accommodation of additional time off work due to her heart condition.

The evidence reveals that plaintiff and her husband gave plaintiff's supervisors two doctors' notes--both dated March 29, 2012.  The first summarizes plaintiff's visit to Yale's occupational health clinic for the minor injuries she sustained when she fell at work on March 20.  The form indicates that plaintiff would be out of work until April 2.  The second note is from plaintiff's primary care physician, Dr. Kumar, who plaintiff saw at the recommendation of Yale's occupational health clinician to address her markedly high blood pressure.

Dr. Kumar's note states that plaintiff would be out of work until further evaluation by her cardiologist.

Plaintiff testified that when she delivered Dr. Kumar's note to Howell, they had the following conversation: "I told her I will let her know what my date was to see my cardiologist. And she was like okay. And it was . . . like we'll touch base with each other. That was it. And then I got the [termination] letter." (Pl. Depo., Doc. #43-4, p. 20.) After March 29, plaintiff spoke with supervisor Howell at least once or twice by phone. (Pl. Depo., Doc. #43-4, p. 20.) During these calls, she informed Howell of the progress of her treatment with her cardiologist and stated that although she did not know when she could return to work, she would keep Howell informed. (Pl. Depo., Doc. #43-4, pp. 20-21.)

Notwithstanding these conversations and Dr. Kumar's March 29 note that plaintiff would be out of work until further evaluation by her cardiologist, Yale terminated plaintiff's employment after being absent for five consecutive work days, starting with April 2--the date occupational health had cleared plaintiff to return to work. Yale knew that plaintiff had a serious heart condition, for which she received ongoing treatment. Plaintiff alleges that she repeatedly informed her supervisors that she was being treated by her cardiologist and

did not know when she would be able to return to work.

Plaintiff testified that supervisor Howell

> knew I was going, seeing my heart doctor, I was having
> a stress test.  So she knew that I was having--[a] kind
> of remission with my heart.  And I still kept working.
> And her knowing that . . . I have a chronic heart
> condition and that I always worked and then they turn
> around and ordered me to go to Occupational Health an[d]
> then terminated me, that to me was premeditated . . . .
> [T]hey both knew that I had a heart condition . . . and
> they knew that I was just going through . . . things as
> a person . . . that had caused me stress.  And then on
> top of this falling and being injured . . . that compiled
> [sic] my illnesses also.  So them knowing, that's the
> thing.  Them knowing when they hired me that I had a
> heart condition and that I could get sick any minute, it
> was like cancer, you being good one day and then the
> next you . . . [have] to be in a hospital.  So they knew.

(Pl. Depo., Doc. #43-4, pp. 15-16.)

From this evidence, a reasonable trier of fact could infer

that Yale was aware of plaintiff's need for an accommodation for

her heart condition--namely, to remain off work until she

received medical clearance from her cardiologist--and that

Yale's stated reason for terminating plaintiff was mere pretext

for discrimination on the basis of her disability.

IV.  Conclusion

For the foregoing reasons, defendant's motion for summary

judgment (doc. #42) is DENIED.

This is not a recommended ruling.  The consent of the

parties allows this magistrate judge to direct the entry of a

judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

 SO ORDERED at Hartford, Connecticut this 10th day of March, 2017.

                              _____/s/_____
                              Robert A. Richardson
                              United States Magistrate Judge